UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID L. COLE, et al.                          CIVIL ACTION

VERSUS                                         CASE NO. 14-0298

JEBF HOLDINGS, LLC, et al.                     SECTION: "G"(3)

## ORDER

Before the Court are Defendants Brian Rose's ("Rose") and JEBF Holdings, LLC's ("JEBF") (collectively, "Defendants") "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted and Alternative Motion for a More Definite Statement"[1] and Defendants "Motion to Strike Plaintiff's [sic] Response Memorandum in Opposition Attached Internet Article."[2] Having considered the motions, the memoranda, and the applicable law, the Court will grant Defendants' Motion to Strike and grant in part and deny in part Defendant' Motion to Dismiss.

## I. Background

Plaintiffs David L. Cole and John M. Mulhall (collectively, "Plaintiffs") filed the petition in this matter on December 18, 2013 in the 17th Judicial District Court, Parish of Lafourche,[3] wherein they allege that Rose, JEBF, and Louisiana Delta Oil Co., LLC ("Louisiana Delta") fraudulently converted Plaintiffs' funds. Plaintiffs allege that they each invested $69,463.50 in an oil well, LDF #4, located in Lafourche Parish, Louisiana and operated by Louisiana Delta.[4]

---

[1] Rec. Doc. 9.

[2] Rec. Doc. 13.

[3] Rec. Doc. 1-2.

[4] *Id.* at ¶ 3.

1

According to the complaint, Plaintiffs purchased these interests from Lux Petroleum, Inc., which is not a party to this lawsuit.[5]  Plaintiffs seek a judgment awarding them an ownership interest in LDF #4, an accounting and payment of royalties allegedly owed to them, and a preliminary injunction enjoining Louisiana Delta Oil Co. from disbursing any royalties to Defendants until the final resolution of this litigation.[6]

Defendant Rose was served on January 8, 2014.[7] Defendants removed the case to federal court on February 7, 2014.[8] At that time, neither JEBF nor Louisiana Delta Oil had been served.[9] On March 10, 2014, Defendants filed the pending "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted and Alternative Motion for a More Definite Statement."[10] Plaintiffs filed a memorandum in opposition on March 27, 2014,[11] and Defendants filed a reply memorandum on April 1, 2014.[12] Also on April 1, 2014, Defendants filed the pending "Motion to Strike Plaintiff's [sic] Response Memorandum in Opposition Attached Internet Article,"[13] which Plaintiffs have not opposed.

---

[5] *Id.* at ¶ 5.

[6] *Id.* at p. 4.

[7] *See* Rec. Doc. 1 at p. 2.

[8] Rec. Doc. 1.

[9] *Id.* at p. 2.

[10] Rec. Doc. 9.

[11] Rec. Doc. 11.

[12] Rec. Doc. 15.

[13] Rec. Doc. 13.

## II. Parties' Arguments

### A.    Defendants' Arguments in Support

Defendants argue that Plaintiffs have failed to plead each of the following elements of fraud with respect to Defendants: (1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury.[14]   According to Defendants, Plaintiffs have failed to articulate who made the alleged fraudulent representations or "what their $69,463.50 claim was supposed to obtain."[15] Specifically, Defendants argue that Plaintiffs allege fraudulent misrepresentation against Lux Petroleum Inc., but not by the Defendants herein.[16] Also, Defendants aver that Plaintiffs claim both that they paid $69,463.50 to acquire an interest in LDF #4, and that they paid that sum to acquire an interest in a Limited Liability Partnership, which had an interest in the oil and gas well.[17] According to Defendants, "[t]he Plaintiffs' lack of conformity to Fed. R. Civ. P. 9[ ] has made it impossible for the Defendants to answer the allegations of the Plaintiff."[18]

Next, according to Defendants, Plaintiffs admit that Defendants had no interest in the Well when Plaintiffs allegedly obtained an interest in that well.[19]   Defendants claim that, according to the Petition, Plaintiffs obtained an interest in the Well or Lux-LDF #4 in April 2008, and JEBF did not

---

[14] Rec. Doc. 9-1 at pp. 3–4 (citing *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

[15] *Id.* at p. 4.

[16] *Id.* (citing Rec. Doc.

[17] *Id.* at p. 4.

[18] *Id.*

[19] *Id.* at p. 5.

obtain an interest in that well until October 2008.[20] Accordingly, Defendants aver, the fraud that Plaintiffs allege occurred before JEBF obtained an interest in the Well.

Defendants additionally argue that Brian Rose is not a managing partner of JEBF, as Plaintiffs allege, but is rather a member of JEBF.[21] According to Defendants, "no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company," though "a member may be liable for acts of fraud that he committed personally."[22] In order to pierce the veil of liability for an LLC, Defendants aver, the Court must analyze the factors articulated in *Ogea v. Merritt*: (1) whether a member's conduct could be fairly characterized as a traditionally recognized tort; (2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; (3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and (4) whether the conduct at issue was done outside the member's capacity as a member.[23]  In this case, Defendants claim, Plaintiffs have failed to assert what conduct Rose committed that would constitute fraud, or that they entered into a contract with JEBF.[24] Defendants submit that Rose has never communicated with or made representations to Plaintiffs, and accordingly cannot be individually liable for the acts of JEBF.[25]

Next, Defendants argue that the operative facts contained in the Petition do not involve

---

[20] *Id.* (citing Rec. Doc. 1-2 at ¶¶ 1, 4, 6).

[21] *Id.* at p. 6.

[22] *Id.* (citing La. R.S. 12:1320(A); (D)).

[23] *Id.* at pp. 6–7 (citing *Ogea v. Merritt*, 2013-1085 (La. 12/10/13)).

[24] *Id.* at p. 7.

[25] *Id.*

4

Defendants.[26]  According to Defendants, Plaintiffs are attempting to impute liability onto JEBF and Rose for the alleged actions of Lux Petroleum and Enterra Energy – entities that Plaintiffs have not made Defendants in this litigation.[27] Defendants also contend that Plaintiffs have failed to plead the Single Business Enterprise Theory, which is "[t]he only legally cognizable theory to make such an imputation of liability."[28] Defendants aver that Louisiana courts have held that a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality of another corporation.[29] In this case, they argue, the Petition does not allege that Plaintiffs paid money to any Defendant herein to acquire an interest in the Well, and "[t]hus, Plaintiffs are asserting that the alleged actions of Lux Petroleum, Inc. should implicate liability for JEBF Holdings, LLC."[30] However, Defendants contend, Lux Petroleum and JEBF "do not have the sort of connection" that is required to impute liability – in fact, "[t]he only nexus that Plaintiffs rely upon is that a member of Enterra Energy, LLC has a familiar relationship with Brian Rose."[31] It is Defendants' position that Plaintiffs are seeking to hold JEBF liable for the alleged actions of a separate entity solely because of a blood relationship between two members of those separate entities, "which completely ignores the law on Single Business Enterprise Theory."[32]

---

[26] *Id.*

[27] *Id.* at pp. 7–8.

[28] *Id.* at p. 8.

[29] *Id.* (citing *Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1167 (La. 1991); *Southern Capitol Enterprises, Inc. v. Conseco Services, LLC*, 476 F.Supp.2d 589 (2007)).

[30] *Id.* at p. 9.

[31] *Id.* (referencing *Southern Capitol Enterprises, Inc. v. Conseco Services, LLC*, 476 F. Supp. 2d 589, 595-596 (2007)).

[32] *Id.*

Defendants next argue that Plaintiff's claims for fraud and underpayment of royalties have prescribed.[33] First, according to Defendants, Plaintiffs' fraud claim is a delictual action that is subject to a one year liberative prescription period, which begins to run from the date of injury - in this case, the date that Plaintiffs allegedly paid to have an interest in the oil well based on the alleged misrepresentation of Lux Petroleum.[34] Defendants aver that Plaintiffs have failed to allege that prescription has tolled under the doctrine of *contra non velentum*, under which the prescriptive period commences from the date the Plaintiff knew or should have known of the tortious events.[35] Plaintiffs' fraud cause of action is prescribed even if *contra non velentum* applies here, Defendants argue, because Plaintiffs knew or should have known that they did not receive a royalty after April 2008.[36] Additionally, Defendants aver that Plaintiffs' claim for underpayment of royalties for the production of minerals is subject to a three-year prescriptive period.[37] Defendants therefore contend that Plaintiffs' claims for underpayment of royalties from April 2008 to December 18, 2010 is prescribed.[38]

Defendants alternatively seek a more definite statement pursuant to Fed. R. Civ. P. 12(e). Specifically, "Defendants urge the following defects in the Plaintiffs' Complaint that need clarification: (A) Plaintiffs need to detail ownership interest being alleged; (B) Date ownership

---

[33] *Id.* (citing *Cross v. Lucius*, 713 F.2d 153 (5th Cir. 1983).

[34] *Id.* at p. 10 (citing La. C.C. art. 3492; *Bell v. Demax Management Inc.*, 2001-0692 (La. App. 4 Cir. 7/24/02), 824 So.2d 490, 492; *Wimberly v. Gatch*, 635 So.2d 206, 211 (La. 1994)).

[35] *Id.*

[36] *Id.*

[37] *Id.* at p. 11 (citing La. C.C. art. 3494(5); *Board of Commissioners of Caddo Levee District v. Pure Oil Co.*, 120 So. 373 (La. 1929); *Parker v. Ohio Oil Co.*, 186 So. 604 (1939); *Hankamer v. Texaco, Inc.*, 387 So.2d 1251 (La. App. 1st Cir. 1980)).

[38] *Id.*

interest acquired and from whom; and (C) Vague and ambiguous allegations of fraud."[39] First, Defendants aver that Plaintiffs allege that they purchased an interest in either an oil and gas well, or an interest in an entity called Lux LDF #4, but that "Plaintiffs' contradictory and broad allegations make it impossible to determine the ownership interest being claimed by Plaintiffs in the case at bar."[40] Defendants pose the question "[a]re the Plaintiffs claiming to be an owner of the actual physical well or an owner of some other unnamed mineral interest, which may grant to Plaintiffs the right to participate in the production from the well?"[41] Defendants argue that under Louisiana law, oil and gas are not owned until reduced to possession, and oil and gas are not subject to absolute ownership as specific things apart from the soil of which they form a part.[42] Defendants state:

> Plaintiffs' eight paragraph petition makes broad allegations that they purchased an interest in either an oil and gas well (Paragraph 3 of the Plaintiffs' Petition) or an interest in an entity called lux-LDF #4, LLP (Paragraph 5 of the Plaintiffs' Petition). Paragraph 3 of the Plaintiffs' Petition states in relevant part, "Plaintiffs show that in the spring of 2008 each of them invested the sum of . . . ($69,463.50) Dollars in an oil well, LDF #4. . . .," compared to Paragraph 5 that states in relevant part, "Plaintiffs show that on April 28, 2008 each purchased a ½ unit interest in lux-LDF#4, LLP for $69,463.50. . . ." Plaintiffs' contradictory and broad allegations make it impossible to determine the ownership interest being claimed by Plaintiffs in the case at bar.

Defendants additionally contend that they "are entitled to a more definite statement of not only the type of ownership interest being claimed but the date of the acquisition of such ownership

---

[39] *Id.* at pp. 11-12.

[40] *Id.* at p. 12 (citing Rec. Doc. 1-2 at ¶¶ 3, 5).

[41] *Id.*

[42] *Id.* (citing *Succession of Rugg*, 339 So.2d 519 (La.App. 2nd Cir. 1976); *Hodges v. Long-Bell Petroleum Co.*, 121 So.2d 831 (La. 1960)).

interest and from whom the ownership was acquired."[43] Finally, Defendants argue that Plaintiffs'

allegation of fraud is "vague and ambiguous." According to Defendants, Plaintiffs pled that Rose,

and/or other members of the Rose family and/or entities they controlled, to wit, Enterra Energy and

JEBF, fraudulently converted the Plaintiffs' funds and invested them in LDF #4 in Lafourche

Parish, La., for themselves rather than purchasing the interest for Plaintiffs.[44]

**B.**    ***Plaintiffs' Arguments in Opposition***

  Plaintiffs argue that:

> [I]n 2008 they got involved with entities of the Rose Family and were induced to
> purchase an interest in an oil and gas well in Lafourche Parish, La. being LDF #4
> which, in truth and in fact was operated by Louisiana Delta Oil Co., LLC. Though
> the plaintiffs payed [sic] the purchase price under their contract with the Rose Family
> business entity, they never received the property or interests they purchased. Plaintiff
> [sic] have since learned that JEBF Holdings and Brian Rose, or the Rose Family,
> obtained the interest in said well.[45]

Furthermore, Plaintiffs contend that "the Rose Family is a massive fraudulent enterprise bilking

numerous investors out of millions of dollars."[46] Plaintiffs aver that the present case is analogous

to *S.E.C. v. Berkshire Resources, LLC*, wherein, Plaintiffs claim, the Southern District of Indiana

rendered a $400,000 judgment against Rose.[47]

  With respect to Defendants' argument that Plaintiffs' Petition fails to state a claim upon

which relief may be granted, Plaintiffs state:

---

[43] *Id.* at p. 15.

[44] *Id.* (citing Rec. Doc. 1-2 at ¶ 4).

[45] Rec. Doc. 11 at p. 1.

[46] *Id.*

[47] *Id.* at pp. 1–2. Plaintiffs do not provide an accurate or complete citation to this case; the Court assumes that
Plaintiffs are referring to *S.E.C. v. Berkshire Res., L.L.C.*, 2009 WL 4260219 (S.D. Ind. Nov. 20, 2009).

> As in the Indiana case, this court is, in essence[,] dealing with an octopus known as the Rose Family [sic] in which the individual members of the Rose family are the head and the tentacles are the various business entities controlled by the Rose family, such as Enterra, Lux Petroleum and others. Plaintiffs believe that money from investors would come into the Rose Family through one of its "tentacles" e.g. Lux Petroleum and go out through another tentacle, e.g. Enterra. [sic] or in this case, JEBF Holdings, LLC.[48]

Plaintiffs next aver that because their Petition was originally filed in state court in Lafourche Parish, Louisiana, it is not required to comply with the Federal Rules of Civil Procedure. Additionally, Plaintiffs state, "[h]ow complicated can it be that plaintiffs allege they contracted to purchase mineral interests in LDF#4 and never received them."[49]

With respect to Defendants' argument that Rose is not individually liable to Plaintiffs, Plaintiffs argue that "[t]he court in Indiana did not find in that [sic] difficult and pierced any corporate veil that may have been raised by Brian Rose, his father and siblings."[50] Turning to the issue of prescription, Plaintiffs contend that "this was a suit under contract and subject to a liberative prescription of ten years."[51]  Plaintiffs additionally argue that because they "have never owned any mineral interest in LDF#4," their claim for mineral royalties is not prescribed by the liberative prescription of three years as provided by La. C.C. Art. 3494.[52]

As part of their memorandum in opposition,  Plaintiffs submit to the Court a November 20, 2009 article apparently from www.WHAS11.com which appears to discuss an oil and gas fraud

---

[48] *Id.* at p. 2.

[49] *Id.*

[50] *Id.* at pp. 2–3.

[51] *Id.* at p. 3 (citing La. C.C. Art. 3499; *Amoco Prod. Co. v. Texaco, Inc.*, 2002-240 (La. App. 3 Cir. 1/29/03), 838 So. 2d 821 *writ denied*, 2003-1102 (La. 6/6/03), 845 So. 2d 1096 and *writ denied*, 2003-1104 (La. 6/6/03), 845 So. 2d 1096; *Olinde Hardware & Supply Co. v. Ramsey*, 98 So. 2d 835 (La. Ct. App. 1957)).

[52] *Id.*

investigation against the Rose family.[53] Plaintiffs explain that the article is "an investigative report" that offers "[a] fuller explanation of the Rose family."[54]

## C.      Defendants' Reply in Further Support

In further support of their motion, Defendants argue first that, in opposition to Plaintiffs' contentions, the Federal Rules of Civil Procedure, including the pleading requirements, are applicable to state court actions that have been removed to federal court.[55] Next, Defendants aver that

> Plaintiffs [sic] Response Brief cites the Relief Defendant consent Judgment [sic] as evidence of the piercing of the corporate veil. Nowhere in such consent Relief Judgment is there any mention of piercing of the corporate veil of JEBF Holdings, LLC and/or liability of Brian Rose under any piercing of a corporate veil theory of liability.[56]

Defendants distinguish the present case from *Amoco Prod. Co. v. Texaco, Inc.* which, they contend,

> involved a parent corporation and a wholly owned subsidiary corporation managed by the parent corporation, whose assets were directly controlled by the parent corporation, whose subsidiary employees participated in the parent corporations retirement, whose subsidiary income was swept daily into the account of the parent corporation, and whose parent corporation referred to the subsidiary as its oil and gas division. No such allegations are alleged in the case at bar.[57]

Defendants argue that Plaintiffs cannot assert a single factor in favor of piercing the corporate veil,

---

[53] *Id.* at pp. 5-9.

[54] *Id.* at pp. 1–2.

[55] Rec. Doc. 15 at p. 2 (citing Fed. R. Civ. P. 81 (c)(1); *Porte v. Home Federal Sav. & Loan Ass'n*, 409 F. Supp.752 (D. Ill. 1976); *Hunt v. BAC Home Loans Servicing, LP*, 2012 U.S. Dist. LEXIS 8076, 2012 WL 219330 (S.D. Tex. Jan. 24, 2012)).

[56] *Id.* at p. 3. The Court assumes that Defendants are referencing *S.E.C. v. Berkshire Res., L.L.C.*, 2009 WL 4260219 (S.D. Ind. Nov. 20, 2009).

[57] *Id.* (citing *Amoco Prod. Co. v. Texaco, Inc.,* No. 2002-240 (La. App. 3rd Cir. 1/29/2003), 838 So.2d 821).

and have not asserted a facially plausible cause of action.[58]

Turning to the issue of prescription, Defendants aver that Plaintiffs failed to address in their opposition memorandum that their fraudulent conversion claim has prescribed.[59] Additionally, Defendants contend that "[a]pparently, having recognized that they failed to state a claim for fraud and fraudulent conversion of Plaintiffs['] funds, Plaintiffs in their Response Brief now argue that their claim is one for breach of contract to sell interest in the LDF#4 Well subject to the liberative prescriptive period of ten years."[60] Defendants argue that:

> [T]here was never any contractual relationship to sell interest [sic] in the LDF#4 Well between Plaintiffs and Defendants Brian Rose and/or JEBF Holdings, LLC. In fact, Plaintiffs claim to have obtained on April 28, 2008 a 1/2 unit each partnership interest for the sum of $69,463.50 each in LUX LDF#4 LLP from Lux Petroleum, Inc. which Plaintiffs claim LUX LDF#4 LLP owned an interest in the LDF#4 Well and its generic yet unexplained claim of a direct ownership interest in the LDF#4 Well. Thus, Plaintiffs [sic] contract is with Lux Petroleum, Inc., not Defendants.[61]

It is Defendants' position that Defendants are not obligors under a contract with Plaintiffs, and therefore owe no contractual obligations to Plaintiffs.[62] Because no such contract exists, Defendants contend, Plaintiffs' reliance on *Amoco* and *Olinde* is misplaced.[63] Finally, Defendants argue that Plaintiffs have "failed to sue the entity to which they alleged to have contracted with, i.e. Lux

---

[58] *Id.*

[59] *Id.* at p. 4.

[60] *Id.*

[61] *Id.* at p. 5 (citing Rec. Doc. 1-2 at ¶ 5).

[62] *Id.*

[63] *Id.* at p. 6 (citing *Amoco*, 838 So.2d 821; *Olinde*, 98 So.2d 835).

Petroleum, Inc."[64]

**D.      *Defendants' Motion to Strike Plaintiff's [sic] Response Memorandum in Opposition Attached Internet Article***

On April 1, 2014, Defendants Brian Rose and JEBF filed a separate motion to strike[65] Plaintiff's memorandum in response[66] to Defendants' Motion to Dismiss.[67] Defendants argue that in deciding a motion to dismiss for failure to state a claim, a court may consider the contents of the pleadings, including attachments thereto, as well as documents attached to the defendants' motion to dismiss that are referred to in the plaintiffs' complaint and are central to their claim.[68] Defendants concede that when addressing a 12(b)(6) motion, the court may also consider matters of which it may take judicial notice, including matters of public record.[69] However, Defendants contend, "[t]he Court may not take judicial notice pursuant of Federal Rule of Evidence 201(b)(2) and (c) of a matter subject to dispute and which are not self-evident."[70]

Defendants argue that "[t]he internet article attached to Plaintiffs' response memorandum[71] is not a matter of public record, contains hearsay opinions and statements of matters subject to dispute that are not self-evident, and the internet article is unauthenticated and outside of the trial

---

[64] *Id.* at p. 7.

[65] Rec. Doc. 13.

[66] Rec. Doc. 11.

[67] Rec. Doc. 9.

[68] Rec. Doc. 13-1 at p. 2 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000)).

[69] *Id.* (citing *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017-1018 (5th Cir. 1996); *Norris v. Hearst Trust*, 500 F.3d 454, 461 at n. 9 (5th Cir. 2007)).

[70] *Id.* (citing *Hardy v. Johns-Manville Sales Corp.,* 681 F.2d 334 (5th Cir. 1982)).

[71] Rec. Doc. 11 at pp. 5–9.

court's territorial jurisdiction."[72] Defendants accordingly move to strike the internet article.[73]

Plaintiffs do not oppose Defendants' Motion to Strike.

### III. Law and Analysis

**A.    Defendants' "Motion to Strike Plaintiff's [sic] Response Memorandum in Opposition Attached Internet Article"**

No memorandum in opposition to Defendants' Motion to Strike, which was set for hearing on April 16, 2014, was submitted, timely or otherwise.  Local Rule 7.5 of the Eastern District of Louisiana requires that memoranda in opposition to a motion be filed eight days prior to the date set for hearing on the motion.  Accordingly, this motion is deemed to be unopposed. This Court has authority to grant a motion as unopposed, although it is not required to do so.[74]

In considering a motion to dismiss for failure to state a claim, a district court must generally limit itself to the contents of the pleadings, including attachments thereto.[75] However, the Fifth Circuit has noted approvingly "that various other circuits have specifically allowed that documents that a defendant attaches to a motion to dismiss are considered  part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[76] In such instances, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[77]

---

[72] Rec. Doc. 13-1 at p. 2.

[73] *Id.* at p. 2.

[74] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350,356 (5th Cir. 1993).

[75] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed.R.Civ.P. 12(b)(6)).

[76] *Id.* (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

[77] *Id.*

Here, Plaintiffs urge the Court to review a document attached not to the pleadings or to Defendants' motion, but rather to Plaintiffs' own opposition memorandum. Even if it was properly submitted, an internet article involving a fraud investigation from another state bears no relevance to the motion at hand. Having determined that the article is improperly before the Court and will not assist the Court in determining whether Plaintiffs have stated a claim in their petition, the Court will **GRANT** Defendants' "Motion to Strike Plaintiff's [sic] Response Memorandum in Opposition Attached Internet Article." The Court will not consider the internet article when ruling on Defendants' "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted and Alternative Motion for a More Definite Statement."[78]

## B.   Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be granted and Alternative Motion for a More Definite Statement

### 1.    Rules 12(b)(6) and 9(b)

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face."[79]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[80] A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.[81]  A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic

---

[78] Rec. Doc. 9.

[79] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[80] *Id.*

[81] *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 239 (5th Cir. 2009).

recitations of the elements of a cause of action.[82] In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[83] If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed.[84]  The court may not consider new factual allegations made outside the complaint.[85]

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement for fraud claims. Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or  mistake."[86]   The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[87] In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out."[88]   The required conditions of a person's mind, however, may be alleged generally.[89]  The requirements of Rule 9(b) are "supplemental to the Supreme Court's recent interpretation of Rule 8(a) requiring enough facts

---

[82] *Id.*

[83] *Lormand,* 565 F.3d at 257.

[84] *Twombly,* 550 U.S. at 555.

[85] *Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 286 (5th Cir. 2006).

[86] Fed.R.Civ.P. 9(b).

[87] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 207 (5th Cir. 2009) (citing *Williams v. WMX Tech., Inc.,* 112 F.3d 175, 177 (5th Cir. 1997)).

[88] *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 723 (5th Cir. 2003) (quoting *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir. 1992)).

[89] *Id.*

[taken as true] to state a claim to relief that is plausible on its face."[90]  Further, a plaintiff may plead fraud "upon information and belief only when the relevant facts are peculiarly within the opposing party's knowledge, and the plaintiff supports his allegations with an adequate factual basis."[91]  This exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations."[92]

State law fraud claims, such as the ones apparently alleged by Plaintiffs here, are subject to the pleading requirements of Rule 9(b).[93]  Therefore, Plaintiffs must plead with particularity the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."[94]

### 2.      Rule 12(e)

Rule 12(e) entitles a party to a  more definite statement when a portion of a pleading to which a responsive pleading is allowed "is so vague or ambiguous that the party cannot reasonably prepare a response."[95]  A party may rely on Rule 12(e) to challenge the sufficiency of a pleading

---

[90] *Lentz v. Trinchard,* 730 F.Supp.2d 567, 579 (E.D.La. 2010) (citing *Grubbs,* 565 F.3d at 185) (quoting *Twombly,* 550 U.S. at 570).

[91] *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.,* 2000 WL 17838 (E.D. La. Jan. 10, 2000) (internal quotation marks omitted); *see also U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997).

[92] *Thompson,* 125 F.3d at 903 (quoting *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir. 1994)).

[93] *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 339 (5th Cir. 2008) (explaining that both state-law fraud claims and federal securities claims are subject to the heightened pleading requirements of Rule 9(b)); *see also Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir. 1997) ("We see no principled reason why the state claims of fraud should escape the pleading requirements of the federal rules...").

[94] *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir. 1997) (citations omitted).

[95] Fed R. Civ. P. 12(e).

under Rule 9(b).[96]   A party who invokes Rule 12(e) based on non-compliance with Rule 9(b) requests that the plaintiff replead, but does not seek dismissal of the fraud claim. "When a party seeks dismissal, rather than a more definite statement, for failure to plead fraud with particularity, a Rule 12(b)(6) motion is a proper procedural mechanism."[97]

### 3.    Analysis

Defendants seek dismissal of the fraud claim brought against them by Plaintiffs. In the alternative, Defendants move under Rule 12(e) for a more definite statement based on Plaintiffs' alleged failure to plead fraud with particularity pursuant to Rule 9(b).

In their petition, Plaintiffs assert that "ROSE, and/or other members of the Rose family and/or other entities they controlled, to wit, Enterra Energy and JEBF, fraudulently converted the plaintiffs [sic] funds and invested them in the LDF#4 oil well in Lafourche Parish, La., for themselves rather than purchasing the interest for the plaintiffs."[98] In their response memorandum, however, Plaintiffs allege that "they contracted to purchase mineral interests in LDF#4 and never received them," and that they "have always alleged that this was a suit under contract."[99] Though it is unclear whether Plaintiffs' fraud claims sound in contract or in tort, the Court finds that the Petition does not allege sufficient facts to recover under either cause of action.

---

[96] *Lindsey v. Dyncorp Int'l LLC,* 2009 WL 1704253, at *1 (S.D. Tex. June 17, 2009) (citing 5C Wright & Miller, *Federal Practice and Procedure* § 1376, at 330–31 ("Even though Rule 9 itself contains no mechanism for enforcing its terms, numerous cases make it clear that the common practice has been to use a motion under Rule 12(e) for that purpose."); *see also Bishop v. Shell Oil Co.,* 2008 WL 57833, at *1–2 (E .D. La. Jan. 3, 2008) (granting Rule 12(e) motion based on failure to comply with Rule 9(b)); *Old Time Enterprises, Inc. v. Int'l Coffee Corp.,* 862 F.2d 1213, 1217 (5th Cir. 1989) (affirming district court's order requiring a more definite statement under Rule 12(e) when plaintiff's fraud claims failed to comply with Rule 9(b)).

[97] *Douglas v. Renola Equity Fund II, LLC.,* 2014 WL 1050851 (E.D. La. Mar. 14, 2014) (citation omitted).

[98] Rec. Doc. 1-2 at ¶ 4.

[99] Rec. Doc. 11 at pp. 2–3.

17

Louisiana law defines fraud by a party to a contract as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."[100]  Plaintiffs state in their memorandum "[h]ow complicated can it be that plaintiffs allege they contracted to purchase mineral interests in LDF#4 and never received them."[101]  In their Petition, however, Plaintiffs fail to allege that either Rose or JEBF were parties to a contract with Plaintiff. In fact, the Petition states that Plaintiffs purchased their interests in LDF #4 from Lux Petroleum, Inc, which is not a party to this case.[102] Furthermore, Plaintiffs do not allege that there was a misrepresentation or suppression of truth, or that Rose or JEBF intended to obtain an unjust advantage or cause inconvenience to Plaintiffs.[103]

Similarly, to recover under a cause of action in delictual fraud under Louisiana law, a plaintiff must prove three elements: (1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury.[104] However,  Plaintiffs do not allege that any misrepresentations at all were made by Rose or by a representative of JEBF, let alone that such misrepresentations were made with the intent to deceive or that  Plaintiffs  justifiably relied on them with resultant injury.  Because the Petition does not plead with sufficient particularity the nature of the fraud claim, the Court will not speculate as to whether Plaintiffs' claims have prescribed.

---

[100] La. Civ. Code art. 1953.

[101] Rec. Doc. 11 at p. 2.

[102] Rec. Doc. 1-2 at p. 3.

[103] *See* Rec. Doc. 1-2.

[104] *Kadlec Medical Center v. Lakeview Anesthesia Assoc.,* 527 F.3d 412, 418 (5th Cir. 2008); *see also Gonzalez v. Gonzalez,* 20 So.3d 557, 563 (La.Ct.App. 2009).

Additionally, group pleading is impermissible under Rule 9(b), and "[p]laintiffs must plead specific facts as to each defendant for each of the Rule 9(b) requirements."[105] In the Petition, however, Plaintiffs bring a single allegation of fraudulent conversion against both Rose and JEBF, without pleading specific facts as to each Defendant.[106] The Court concludes that Plaintiffs' fraud allegations against Rose and JEMF fall short of the pleading standard articulated in Rule 9(b).

Nevertheless, dismissal is a harsh remedy, and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[107] Short of granting a motion to dismiss, a court may grant a plaintiff leave to amend his complaint.[108] Considering that Defendants have alternatively requested a more definite statement pursuant to Rule 12(e), the Court will allow Plaintiffs leave to amend their complaint.[109]

### V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion to Strike Plaintiff's [sic] Response Memorandum in Opposition Attached Internet Article"[110] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' "Motion to Dismiss for Failure to State a

---

[105] *Lang v. DirecTV*, 735 F.Supp.2d 421, 437 (E.D. La. 2010) (citation omitted).

[106] Rec. Doc. 1-2 at p. 3.

[107] *Beanal v. Freeport-McMoran, Inc,* 197 F.3d 161, 164 (5th Cir. 1999).

[108] See *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("This standard 'evinces a bias in favor of granting leave to amend. The policy of the Federal Rules is to permit liberal amendment.'") (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[109] Rec. Doc. 9.

[110] Rec. Doc. 13.

Claim Upon Which Relief Can be Granted and Alternative Motion for a More Definite Statement"[111]

is **DENIED** as to Defendants' Motion to Dismiss and **GRANTED** as to Defendants' Rule 12(e)

motion for a more definite statement.

      **IT IS FURTHER ORDERED** that Plaintiffs are given until December 10, 2014 to file an

amended complaint.

      **NEW ORLEANS, LOUISIANA**, this  10th   day of November, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[111] Rec. Doc. 9.